Good morning, your honors. May it please the court, my name is Craig LeChance and I represent the appellants, PDG Los Arcos and National Retail Development Partners. I will refer to them as PDG and NRDP. As the court is aware from the briefs, PDG and NRDP borrowed money from Mortgages Limited, a lender in Phoenix. Mortgages Limited then turned around and assigned virtually all its interest in the loan agreements to investors who bought fractional participations in the loans. The question in this case is whether, as assinees of the loans, the investors assumed the loans' funding obligation. The bankruptcy court below found they did not and the district court affirmed. We've appealed because under Arizona law, which governs this case, the investors assume both the rights and duties under the loan assignments. There are only a few Arizona... The best case for that assumption you just gave us. I'm sorry, your honor? What's your best case for that assumption you just gave us? That in an assignment, you take not only the benefit, but the duty. I think the best case that we have for that is Norton v. First Federal Savings. You think that's what Norton says? Well, Norton deferred on the issue. If I don't agree with you, do you lose? Norton deferred... I'm being very straight with you. I read Norton. I don't think Norton says that. I don't see where in Norton it says. Outside of what the common law is, which is what I teach most of the days. I don't generally tell I teach, because he's the teacher. I teach most days. On an assignment, you can assign your benefits, but they get no duties. That's the common law in Idaho. So I read Arizona's common law as best I can do. And I can't find in Norton any place where it says, simply by getting a benefit, which is the normal assignment of benefit, that you automatically also get the duty. It seems to me you're arguing novation. And I can't find any novation in these agreements. We're still arguing an assignment, Your Honor. And Norton outlines three approaches. It has the, what I call the express assumption approach, which is where you have to have express language in the assignment to transfer the duties. It also has what I call the implied from the circumstances approach. Which would come under the restatement. Well, the restatement has actually a third approach, which is a presumptive presumption. Well, I mean, I'm just saying. And I would say that under the restatement, there would be a presumption in this case that the investors have. And you don't, you're not saying Arizona goes there, are you? Well, I believe, because I still think... You really believe Arizona goes with the restatement? Well, Arizona typically follows the restatement. I don't say anything about typically. I got to read that court saying that that's where they're going. Frankly, old Idaho didn't believe putting all those savants together and putting a restatement together made it such great law. We don't believe that in Idaho. There are some who believe that, but not us. So I look to see what it is. What is our law? Well, the Norton case left this question open. And I think there is an argument to be made that were the Arizona Supreme Court to revisit this issue now, that it may very well adopt the restatement. You ask me to send it over there and ask them? I have not requested that. I don't think you did. But there's also, there's the approach in Norton where that Norton almost endorsed, which was the second approach it talked about, the implied from the circumstances approach. And Norton came very close to endorsing that. And one of the judges... It didn't. It didn't because it found the circumstances didn't require it to reach that question. But it all but said we follow implied contracts in Arizona, and as a result, we would be inclined to adopt this implied from the circumstances approach. And if you were to adopt that approach in this case, the approach Norton indicated, I think the dismissal of this case was premature. Because if you're talking about circumstances, you're talking about a factual question on which there should have been some discovery before this case was dismissed at the pleading stage. Well, Norton also cited that Grant v. Harner case of 1925. Is that still good law? I believe that is still good law. And that Grant v. Harner case, as I noted in the briefs, the bankruptcy court and the district court below cited that, cited Grant v. Harner as simply holding that duties can only be transferred in an express agreement. But if you look closely at the Grant case, you will notice that the first part of its analysis, the Grant case actually looks to the surrounding circumstances to see if it can imply an assumption of duties. When it can't find an assumption of duties from the circumstances, it then looked to the language of the assignment itself. And so if you put Grant and Norton together, I think it's very probable that the Arizona Supreme Court would follow the implied from the circumstances approach. Let's say that the presumptive, even the presumptive works, or implied. Let's look at the facts. What would give me the idea I ought to apply it here? Because the investors purchase a passive participation in the loan. They have absolutely nothing that they get into it. The agreement doesn't obligate them to come up with any more money. They just lose or confuse, whichever. And they don't get the investors provide capital in return for their security, but they get no voice in the preservation. Now, why should that be something I should accord that approach to? Well, Your Honor, I think if we look at the circumstances of this case, here, mortgage is limited. If it had just wanted to make these investors more secure in their investment, all it had to do was assign the note and the promissory note. But in this case, mortgages limited assigned the loan agreements, assigned every single one of them, the guarantee, everything, executed a document assigning those agreements to the investors. And I think if you look at that, it evinces the... That's talked like a debtor's lawyer. If you are a bank and you're going to make the person secure in their investment, they have absolutely no control. The best place to do is to assign them a portion of the whole. They have no control. They get nothing from it. They don't win. They got to add more at the end. It's more like a stock. Common stock. If you were to buy a stock, you are not assigned a contract that the company has in which you're purchasing in. That's what we had here, where they purchased their loan participation, and then the company turned around and assigned them a contract that it had executed with a third party. But in order for you to be right, I mean, what we're looking at is the contract between mortgage is limited and the investors. So that's the relationship we're looking at. So we're asking, okay, what did the investors agree to assume? You're asking us to read this relationship as they agreed to assume the obligation to pay additional money after they have fully funded. I mean, they're in the high 90s in terms of how much money they provided to mortgage limited. You're saying that we're supposed to read that agreement and say, well, in the event that mortgage limited takes all of the money, the full amount necessary to fund the loans going out, and they don't do it, that we're on the hook for the money that mortgage limited should have paid? I just can't read the contract that way. Well, Your Honor, mortgages limited did not fully fund these loans. It didn't fully fund the loans to your clients. No. But the investors, with just a tiny little fraction not done, they fully funded their obligation to mortgages limited. And you're saying that the investors agreed after we've paid 99.4 percent or whatever it is of our obligation to allow mortgages limited to fund these loans to the borrowers, to your clients. If the borrowers get unhappy because mortgages limited doesn't pass on the money to us, we're obligated to pay more money. I don't see that in the contract. Well, the contract does say both the offering memorandum that was sent to investors and the agency agreement that the investors signed when they appointed mortgages limited to service the loans, both of those agreements say you may be required to provide additional funding. Well, but the required to provide additional funding is a very interesting clause. It says if you are requested to provide the additional funding, you can do it, or if you don't want to do it, we'll buy you out. Or you get a less percentage in the whole. Right. It's either liquidated or diluted. So it doesn't say you have to do it. It says we'll request it, and if you don't want to do it, here's what's going to happen. Well, you don't have to perform a contract either, but if you breach it, there are consequences to a breach. No, but you see, this is in the contract. You don't have to do it, and under the contract, you're permitted to do X or Y. There's no breach by what not performing. Well, Your Honors, I would view that clause talking about the liquidation or the dilution of your interest as essentially a liquidated damages clause, where we have the investor, mortgages limited is telling the investors, you have a funding obligation. If you don't follow that funding obligation, you're in breach, and here's the consequences of your breach. We're going to liquidate your interest, or it's going to be diluted. What language in the contract makes it mandatory that they put up money? Well, it says you may be required to fund, and if you don't, we will dilute your investment or liquidate it. So the may be required is the operative language. May be required if mortgages limited requests additional funding. Is that the operative language? No, the operative language is required. I see. The may is mortgages limited may require you to fund more. They may request more funding. And your view is they may request more funding, and if mortgages limited does request more funding, you are required. Correct. But if you decline to pay it, then here are your two options. You know, they could have said liquidated damages. They didn't. They gave them two very precise sort of alternatives. And even if it's liquidated damages, as you say it, that's far from saying mortgages limited defaults in its obligation to you, the borrowers, and that they will then be required to make up the difference from the default after they have provided fully enough money to mortgages limited to pay out to you. Even on your reading of that quote, liquidated damages, I can't get there. Your Honor, they were assigned all of the loan agreements, and the loan agreements themselves say that they are binding on mortgages limited's assigns. They took the obligation in the loan agreements. The loan agreements have a duty to fully fund PDG's and NRDP's loans. So if they are assigned those loan agreements, that duty to fully fund still exists relative to PDG and NRDP. Has mortgages limited actually made a demand on them to provide more money? I'm not aware of that. Oh, well, that's interesting because your argument is premised upon that demand having been made. I'm saying that mortgages limited could. I don't know what happened when mortgages limited went into bankruptcy because there was no discovery on anything before the case was resolved. You've got two minutes. Why don't we hear from the other side, and then you've got two minutes to respond. Thank you. Morning, Your Honor. May it please the Court. I'm Keith Hendricks. I represent the appellees that are described in the briefs as the MP funds. I have co-counsel here with me today. That is Dax Watson. He represents the appellees known as the pass-through investors. Are you going to split the argument, or are you going to do the other? We are going to split the argument, Your Honor. Roughly how much time? About we'll try and split it for 50-50. Okay. This case is about whether or not a developer borrower who borrowed money from a hard money lender can sue the investors of the hard money lender who didn't have any contracts with the borrower. And I think the questions that we've been through this morning are exactly on point. There are no documents in the record that requires a funding by the investors. I would like to elaborate on that a little bit because it is very important why. And it's really my clients, the MP funds, that illustrate why there was no obligation to fund further investments. The investors in the MP funds, about 1,500 of them, mainly elderly people with their life savings. Very sad story. We've heard lots of them. But they were investing in essentially what is a mutual fund. They weren't picking individual loans. They invested in the MP funds, which was managed by Mortgages Limited. But Mortgages Limited had no equity interest in the funds. The MP funds put the money in, and then Mortgages Limited would direct where the money would go. So the investors are either one more step removed. If Mortgages Limited, who would put a requirement in its contract that the investors would have to fund more, that would require that MP funds would have to fund more at some point in time. Now I understand why you went first. Because the other guys, they go direct. Okay. That's correct. Okay, got it. And so the MP funds, which is essentially if Mortgages Limited was making an argument, I don't have any more money, I need more money from the investors, and then all of a sudden Mortgages Limited put on its investor hat, now I'm an investor, I've made a demand because I don't have enough money, but I can't demand it from myself. Because if he had the money, he would have directed it and funded upstream already. Let me ask you this, which is not directly involved in the legal questions we have in front of us. Who in MP funds made the decision to invest with Mortgages Limited? The investors bought a membership interest in the MP funds. I understand that. Who in MP funds made what turns out to have been a catastrophically bad decision to invest in Mortgages Limited? Mortgages Limited was operated by a man named Scott Coles. He has essentially operated it on all levels. He made the decisions for Mortgages Limited. He made the decisions as the managers of the MP funds. So he was doing MP funds too then? Mortgages Limited was the manager of MP funds. I missed that part. And he ran all the decisions. So the whole argument that they would be able to go to investors and require investors to put more money in if Mortgages Limited ran out of money is unimaginable because Scott Coles controlled it on both sides. And two-thirds of the money that Mortgages Limited was run through these MP funds. So if he ran out of money, that meant that the MP funds ran out of money because he could direct that money anywhere he needed it. And that's why he could not and did not require an absolute condition that the investors put more money in. And now it makes sense that if a loan gets bigger and you're already assigned a specific section of the loan, if you have 1% interest and the loan gets bigger, more people come into it, you're going to be diluted down if you don't keep your ratios. So that's what the documents contemplated. Or people could be bought out. But there was never and could not be a requirement that investors had to fund it because he would be essentially putting himself in a no-win situation, and that's not what happened. This is a case where the documents are pretty clear. There is no express. They're not pretty clear. They're absolutely clear. There is no express delegation of the duty to fund. There is no, and in Arizona, so under the three theories that the appellants have put forward, they argue there is an express delegation requirement. It doesn't exist in this case. On the documents, you've been over those arguments. There's an implied delegation under the circumstances. Again, that's not the law in Arizona. I think Judge Smith went over the common law, and we know what the common law is, but also under the circumstances because you can't have an implied delegation requirement because that makes no sense for where Scott Cole's position was. And then third was the presumption. I'd argue first that's not the law in Arizona. Norton and Grant are good law. They make it very clear. We have not yet adopted it. There has been no referral. We all laughed and said, have you asked us to refer it to the Arizona Supreme Court? That's actually a serious question. They're asking you to come in and speculate on what the Supreme Court would do if they had asked you to refer it to them. That's not before you. And I would argue that Norton and Grant make it pretty clear. With that, I'd like to reserve the rest of my time to my co-counsel unless there's any further questions. Okay. Thank you. Good morning. As Mr. Hendricks noted, my name is Dax Watson. I represent the investors, the folks that put their hard-earned money into these investments and now have nothing to show for it because of the larger bankruptcy. Mr. Hendricks hit on a lot of the ideas that I was going to hit on, and your questions actually were very pointed on a lot of the ideas. But I thought I'd start a little bit, I don't want to say on the factual side, but on the common sense side. And when I was arguing in front of Judge Gaines and then your colleague, Judge McGee, I brought this up in both arguments that what's interesting here is I can't think of another investment vehicle because this is an investment. My clients are called investors. They're putting money into something with the hope of getting a return. I cannot think of another investment vehicle where you invest your money, let's say $100,000, and who you invest it with can come back and demand you invest more. And what I said to both of the judges at the time is some of my clients, they invested everything they had. So they had $100,000 in their savings. They decided I'm going to invest it. How could they invest more? So there's just a common sense element to this that has never, never worked. But more importantly, all of the judges have hit on the big issue here. What document anywhere says that my clients had a requirement to continue funding these investments? None. The only documents that were executed here, Your Honors, were the subscription agreement and the agency agreement. And the agency agreement, which you both hit on, Judge Fletcher and Judge Smith hit on, was explicit in one regard. It said I have no obligation if I'm an investor to go forward and put more money in it. None at all. May require means they may come to me. They may ask you to put it in. You then have a decision as an investor whether or not you want to put money in. If you don't put more money in, you can either get your investment liquidated down or you can get bought out. The express language in the agency agreement says exactly what we're saying, that there was no obligation to fund. And there couldn't be. And just to clarify something that I think was, I don't want to say it's a misstatement, but as you know, this particular proceeding is part of a much, much larger bankruptcy proceeding, a very well-publicized bankruptcy proceeding in Arizona. And as part of that, Judge Gaines had several hearings and even did a bench trial. And in that, there was a bench trial that occurred in which the agency agreements were looked at, were analyzed. And in that, there was testimony given. And what was found is these construction loan agreements that were reportedly assigned to my clients, no one ever knew that. None of the investors ever knew that. And that was a finding in Judge Gaines's court. I think it was Judge Haynes. I'm sorry. That's very disrespectful of me. I apologize, Judge Haynes. Judge Haynes, at least I didn't mess up Judge Merguia's name, who's your colleague, but Judge Haynes had a specific finding that what happened is the counsel that drafted up all these documents and these assignments put them in a vault and locked them up. And the investors never even knew those assignments existed. That's an actual finding in the bankruptcy court. My client signed an agency agreement and a subscription agreement and gave some money and weren't hoping for a return on investment. The next thing they know, they're getting sued saying they have a funding obligation. It's like a punch to the stomach. It's a pow to the stomach. But the bottom line is there is no ongoing duty to fund. Now, turning to the legal issues, Grant is still good law. Grant unquestionably requires an express delegation of duties. And when you look at what Grant did when they were investigating some of the circumstances, pay attention to what they say. They were looking for an express promise. When they were looking at the testimony, they said, hey, did anybody, was there ever an express promise? And they even looked at the fact that it was a mining case, and they said, hey, I guess we could speculate that because one of the gentlemen was working in the mines, maybe, maybe there was a delegation of duties, but they said we were not going to go there because we're looking for an agreement, an express promise. And in Arizona, the assignment itself doesn't give an implication of duties. And that's what Norton said. And Norton didn't go the next step of saying, hey, we're going to go ahead and do this implied delegation. Now, finally, Your Honors, I'd like to remind the Court that both Judge Haynes and Judge Merguia found alternative reasons for granting the motion to dismiss. Not only that Grant still applied, but they applied the third-party beneficiary law. And they also said, hey, even if we're inclined to go down the presumptive approach, we would still not find a presumptive delegation of duties here because this was akin to the transfer of security interest. The transfer of these deeds of trust and the fractional interest in the promissory notes was really just saying, hey, we're going to secure your investment. So we had three alternative grounds which both judges found in favor of our clients and in favor of the motion to dismiss. So unless the Court has any questions, I will conclude. I apologize for not referring to Judge Haynes properly. If that's the worst thing you do today, you're doing fine. Thank you. Thank you. You've saved two minutes. Just a couple things. First, we have in this situation a lender who assigned a loan agreement with extant obligations. And so in this case, there is a question of who is the lender in this case. If we have the lender that assigned the note, the deed of trust, the loan agreement, who is the lender in this case? Who is PDG and NRDP supposed to go to to get money? Who is the real party in interest? I have a feeling that if, in fact, they weren't in bankruptcy, it would have been easy to go to the one who you made the deal with. That is true, but they were acting as an agent. Even though they'd assigned, I have a feeling you'd have gone right there, but they don't have any assets. That is true, Your Honor. They're in bankruptcy now. That's why assignment is different than delegation. That is why they were the agent. That mortgage is limited is who we dealt with in the past. But when funding was not coming from them, we went to the real party in interest, who were the investors who held these notes, these deeds of trust, and these loan agreements that had obligations that still were to be fulfilled. A couple other things I just want to note. Am I wrong? I'm not sure this is critical to the decision I might reach, but am I wrong in thinking that the investors actually have provided 99-point-something percent of the amount necessary to fund the loans to your clients, provided that money to Mortgage is Limited? Well, Mortgage is Limited, what I will say is, first of all, the investors I think the answer is I'm either wrong or I'm right. Am I wrong? You're correct in that the investors provided all of the money that Mortgage is Limited ended up loaning. But in this case, they did not That wasn't the question. I'm sorry. That's not my question. My understanding is that the investors already invested with Mortgage is Limited almost entirely, 99-point-something, of the funds necessary to lend to your clients. And Mortgage is Limited, because it gets in trouble, doesn't pass them on. Am I wrong in that? I believe you are. I do not believe the investors had fully funded these loans. I didn't quite say fully funded. I said 99-point-something. I think in one case there was only 50 percent funded. Okay. I may be wrong. The NRD, one of the loans was only 50 percent funded. Okay. How's my time here? You're over. Okay. But if you want to, we'll give you, you know, you can sum up. Please stop. Please stop. Okay. Well, I will just conclude then and ask that we would like a reversal of this case and a remand. I will rest on my briefs on the removal issue. But ultimately, we would like a remand to Arizona State Court and a reversal of this case. And if you have no other questions, that's it, Your Honor. Okay. Thank you very much. The case last heard, mortgage is limited. 10-15857 is now submitted for decision. And we're in adjournment. Thanks very much.
judges: Mills, Fletcher W. , Smith N. R.